1  MARK S. POSARD (SBN: 208790)
   mposard@grsm.com
2  I. HOOSHIE BROOMAND  (SBN: 210206)
   hbroomand@grsm.com
3  GORDON REES SCULLY MANSUKHANI, LLP
   3 Parkcenter Drive, Suite 200
4  Sacramento, CA 95825
   Telephone: (916) 565-2900
5  Facsimile: (916) 920-4402

6  Attorneys for Defendant
   JTH TAX, INC. DBA LIBERTY TAX SERVICE
7

8              UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10 CONVERGENT MOBILE, INC.            )  CASE NO.
                                      )
11                  Plaintiff,        )  **DEFENDANT JTH TAX, INC. DBA**
                                      )  **LIBERTY TAX SERVICE'S NOTICE**
12     vs.                            )  **OF REMOVAL**
                                      )  **(28 U.S.C. §§1332, 1441)**
13 JTH TAX, INC. DBA LIBERTY TAX      )
   SERVICE AND DOES 1 THROUGH 20,     )  **JURY TRIAL DEMANDED**
14                                    )
                    Defendants.       )  (Sonoma County Superior Court
15                                    )  Case No. 265057)
                                      )
16                                    )

17

18       **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

19       **PLEASE TAKE NOTICE** that Defendant JTH Tax, Inc. dba Liberty Tax Service

20 ("Defendant") by and through its undersigned counsel, contemporaneously with the filing of this

21 Notice, hereby effects removal of the above-referenced action from the Superior Court of the

22 State of California for the County of Sonoma to the United States District Court for the Northern

23 District of California. This removal is based on 28 U.S.C. sections 1332 and 1441, specifically,

24 on the following grounds:

25              **I.      STATEMENT OF JURISDICTION**

26       1.      This is a civil action over which the Court has original jurisdiction based on

27 diversity of citizenship pursuant to 28 U.S.C. section 1332(a).  This action is one that may be

28 removed to this Court by Defendant pursuant to 28 U.S.C. section 1441(b) because it is a civil

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA  95825

action because the parties are considered citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, as set forth herein.  28 U.S.C. 1332, 1441(a) and 1446(b).

## II.    VENUE

2.    The action was filed in the Superior Court of California for the County of Sonoma. Venue properly lies in the United States District Court for the Northern District of California, because it is the district court where the state court action is pending. See 28 U.S.C. §§ 84(a), 1391(a), 1441(a) & (c).

3.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(b), 1391, and 1446.

## III.    STATUS OF THE PLEADINGS

4.    This lawsuit arises out of a contract dispute between Plaintiff Convergent Mobile, Inc. ("Plaintiff") and Defendant JTH Tax, Inc. dba Liberty Tax Service ("Defendant") Superior Court of California, County of Sonoma entitled *Convergent Mobile, Inc. v. JTH Tax, Inc. dba Liberty Tax Service and Does 1 through 20,* Case No. SCV-265057.  ("Complaint").  True and Correct copies of the Summons, Complaint and Civil Case Cover Sheet are attached to this Notice as Exhibit "A" pursuant to 28 U.S.C. section 1446(a).

5.    The Complaint states causes of action for (1) Breach of Contract; (2) Promissory Estoppel; and (3) Breach of Implied Covenant of Good Faith and Fair Dealing.   Plaintiff seeks recovery of General Damages, Special Damages, Reasonable Attorney's Fees, Prejudgment Interest at the Legal Rate, Costs of Suit and Such other and further relief as the Court may deem just and proper.

6.    To Defendant's knowledge, as of the date of this Notice of Removal, no other parties have been named or served with a copy of the Summons and Complaint.

7.    To Defendant's knowledge, no other pleadings, process or orders related to this case have been filed with the Superior Court of the State of California, County of Sonoma.

## IV.    NOTICE TO STATE COURT AND PLAINTIFF'S COUNSEL

8.    Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of the removal will be given

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA  95825

by the undersigned to Plaintiff's counsel of record, Deborah S. Bull and Nicole M. Jaffee of Perry, Johnson, Anderson, Miller & Moskowitz, LLP,  438 1st Street, 4th Floor, Santa Rosa, California  95401, and a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of Sonoma, as required by 28 U.S.C. § 1446(d).

## V.    TIMELINESS OF REMOVAL

9.      A notice of removal in a civil action must be filed within thirty (30) days after service of the Summons and Complaint. 28 U.S.C. § 1446(b); see also *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (holding that the 30-day removal period begins to run upon service of the Summons and Complaint). Here, Defendant was served via certified mail on September 11, 2019 pursuant to what appears to be an attempt to provide sub-service. (Cal. Code. Civ. Proc. section 415.20(a) & (b), 415.95.)  Defendant has filed its Notice of Removal within 30 days. As such, this Notice of Removal is timely.

## VI.    DIVERSITY JURISDICTION

10.     The diversity statute provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States." See 28 U.S.C. § 1332(a).

11.     "Any civil action" commenced in state court is removable if it might have been brought originally in federal court. See 28 U.S.C. § 1441(a).

12.     Any case that could have been commenced in federal court based on diversity of citizenship can be removed from state court on that ground. See 28 U.S.C. § 1441(b). In order to remove a case to federal court on diversity grounds, two elements must be met: (1) complete diversity must exist between the parties, i.e., plaintiffs and defendants must be "citizens" of different states; and (2) the amount in controversy must exceed $75,000. See 28 U.S.C. § 1332.

13.     This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and which may be removed to this Court by Defendant pursuant to 28 U.S.C. § 1441(a) based on the existence of complete diversity of citizenship between the real parties to this action and on the fact that the amount in controversy exceeds $75,000.

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA  95825

1

### A.  Complete Diversity of Citizenship Exists

14.    Diversity of citizenship exists so long as no plaintiff is a citizen of the same state as any defendant at the time the action was filed and at the time of removal.  For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

15.    According to the Complaint, Plaintiff is a corporation organized under the laws of the State of California and was transacting business in Sonoma, California.  (Exhibit A at ¶ 1) This allegation by Plaintiff establishes that it is a citizen of the State of California.  (*Lew v. Moss*, 797 F.2d at 747, 751 (9th Cir. 1986) (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship).)

16.    Further, as alleged in the Complaint, Defendant is a corporation organized and incorporated under the laws of the state of Delaware.  Defendant's status as a foreign corporation is established by the Complaint.  (Id at ¶ 2.)

17.    Accordingly, complete diversity exists between Plaintiff, a citizen of California, and Defendant, a citizen of Delaware.

18.    For purposes of removal, the citizenship of Doe defendants is disregarded and only named defendants are considered. 28 U.S.C. § 1441(a). *Accord, Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (citing 28 U.S.C. § 1441(a)).

19.    Does 1 through 50, inclusive, are wholly fictitious. The Complaint does not set forth the identity or status of any said fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. The citizenship of these Doe defendants is to be disregarded for the purposes of determining diversity jurisdiction and, thus, cannot destroy the diversity of citizenship between the parties in this case. 28 U.S.C. § 1441(a). *Accord, Newcombe, supra*, 157 F.3d at 690-91 (citing 28 U.S.C. § 1441(a)). Furthermore, because the Doe defendants have not yet been served, they need not join or consent to Defendant's Notice of Removal. *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (named defendants not yet served in state court action need not join in the notice of removal), superseded by statute on other grounds in *Ethridge v. Harbor House Rest.*, 861 F.2d 1389 (9th

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani, LLP**
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

Cir. 1988).

**B.    The Amount in Controversy Exceeds the Jurisdictional Limit**

20.    Plaintiff's Complaint is ambiguous as to the amount placed in controversy by its alleged claims, which means that Defendant is only required to demonstrate that the amount in controversy exceeds federal jurisdictional requirements by a "preponderance of the evidence." See *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699, 701 (9th Cir. 2007).  More specifically, Plaintiff's Complaint is silent as to the dollar amount of her claims.  Accordingly, Defendant need only demonstrate that the amount in controversy here exceeds $75,000 by a preponderance of the evidence.

21.    Although Defendant expressly denies any liability for the damages alleged in Plaintiff's Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied, the Court must look to the allegations of Plaintiff's Complaint and presume that Plaintiff will prevail on its claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis "presumes plaintiff prevails on liability").

22.    The Complaint places more than Seventy-Five Thousand Dollars in controversy. Preliminarily, as stated in Paragraph 11 of the Complaint, Plaintiff alleges that they are owed $125,400 for invoice number 903 and that Defendant has refused to pay the invoice.  (Exhibit A, ¶¶ 11-15).   Further, it is important to note that Defendant's counsel previously requested that Plaintiffs' counsel stipulate that the amount in controversy was below $75,000 for purposes of removal.  Plaintiff's Counsel would not stipulate to such terms.

23.    While Defendant denies Plaintiff's allegations of wrongdoing and denies its requests for relief thereon, the facial allegations in Plaintiff's Complaint and the total amount of the contract, purorted penalties, reimbursement, attorneys' fees, and other monetary relief at issue in this action is in excess of this Court's jurisdictional minimum. (*Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) [facts presented in notice of removal, combined with Plaintiff's allegations, sufficient to support finding that jurisdictional minimum satisfied]; *Galt*

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA  95825

*G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-1156 (9th Cir. 1998) [if attorneys' fees are recoverable by plaintiff by statute, the fee claim is included in determining the amount in controversy].)   Plaintiff's claims satisfy the amount-in-controversy requirement. (*Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 559, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) [holding that when a well-pleaded complaint contains "at least one" claim that satisfies the amount in controversy requirement, supplemental jurisdiction may be exercised over the claims of other parties.])

24.     Based on the foregoing, Plaintiff's claims for damages, penalties, attorneys' fees, and other monetary relief exceed the $75,000, jurisdictional minimum of this Court required for federal diversity jurisdiction. 28 U.S.C. § 1332(a).

25.     Removal of this matter is therefore appropriate.

Dated: October 9, 2019                     GORDON REES SCULLY MANSUKHANI, LLP

By:____*/s/ I. Hooshie Broomand*_____
Mark S. Posard
I. Hooshie Broomand
Attorneys for Defendant
JTH TAX, Inc. dba Liberty Tax Service

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA  95825

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
JTH TAX, INC. DBA LIBERTY TAX SERVICE and DOES
1 through 20

**YOU ARE BEING SUED BY PLAINTIFF:**

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CONVERGENT MOBILE, INC.

|  |
|---|
| FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)*<br>**ELECTRONICALLY FILED**<br>**Superior Court of California**<br>**County of Sonoma**<br>**8/26/2019 6:05 PM**<br>**Arlene D. Junior, Clerk of the Court**<br>By: Branden Rasmussen, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

|  |  |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER<br>*(Número del Caso):*  SCV-265057 |

SONOMA COUNTY SUPERIOR COURT
600 ADMINISTRATION DRIVE
SANTA ROSA, CA 95403

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
NICOLE M. JAFFEE 255944 Perry, Johnson, Anderson, Miller & Moskowitz, LLP
438 First Street, 4th Floor (707) 525-8800
Santa Rosa, CA 95401

| DATE:<br>*(Fecha)* | 8/26/2019 6:05 PM | ARLENE D. JUNIOR | Clerk, by<br>*(Secretario)* | *BRANDEN A RASMUSSEN* | Deputy<br>*(Adjunto)* |
|---|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010)*.)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*  Branden Rasmussen

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | CEB\| Essential<br>ceb.com Forms™ | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

BREEN, MICKEY

<table>
<tr><td>

1

2

3

4

5

6

7

</td><td>

Deborah S. Bull, Bar No. 222826
Nicole M. Jaffee, Bar No. 255944
PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ, LLP
438 1st Street, 4th Floor
Santa Rosa, California  95401
Telephone: (707) 525-8800
Facsimile: (707) 545-8242
Bull@perrylaw.net
Jaffee@perrylaw.net

Attorneys for Plaintiff
Convergent Mobile, Inc.

</td><td>

**ELECTRONICALLY FILED**
**Superior Court of California**
**County of Sonoma**
**8/26/2019 6:05 PM**
**Arlene D. Junior, Clerk of the Court**
**By: Branden Rasmussen, Deputy Clerk**

</td></tr>
</table>

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SONOMA

| | |
|---|---|
| Convergent Mobile, Inc., | Case No.  SCV-265057 |
| Plaintiff, | [UNLIMITED CIVIL CASE] |
| v. | **COMPLAINT FOR:** |
| JTH Tax, Inc. DBA Liberty Tax Service and Does 1 through 20, | **(1) Breach of Contract**<br>**(2) Promissory Estoppel**<br>**(3) Breach of Implied Covenant of**<br>    **Good Faith and Fair Dealing** |
| Defendants. | |
| / | Trial Date:None set |

Plaintiff Convergent Mobile, Inc. by and through its undersigned attorneys and for

their Complaint allege as follows:

### GENERAL ALLEGATIONS

1.      Plaintiff Convergent Mobile, Inc. ("Plaintiff") is and at all relevant times was a

corporation organized under the laws of the State of California and was transacting business in

the County of Sonoma, State of California.

2.      Plaintiff is informed and believes and on that basis alleges that defendant JTH

Tax, Inc. DBA Liberty Tax Service ("Defendant") is and at all relevant times was a

corporation organized under the laws of the State of Delaware and was transacting business in

the County of Sonoma, State of California.

3.      Defendants Does 1 through 20, inclusive, are sued herein under fictitious

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ, LLP

1   names. Their true names and capacities are unknown to Plaintiff. When their true names and

2   capacities are ascertained, Plaintiff will amend this Complaint by inserting the true names and

3   capacities herein. Plaintiff is informed and believes and thereon alleges that each of the

4   fictitiously named Defendants is responsible in some manner for the harm caused to Plaintiff.

5         4.      At all times relevant to this action, each defendant, including those fictitiously

6   named, was the agent, servant, employee, partner, joint venture, or surety of the other

7   defendants and was acting within the scope of said agency, employment, partnership, venture,

8   or suretyship, with the knowledge and consent or ratification of each of the other defendants in

9   doing the things alleged in this Complaint.

10         5.      On December 1, 2017, Plaintiff entered into a written Master License

11   Agreement ("the Agreement") with Defendant wherein the parties contractually consented to

12   the jurisdiction of the California courts, regardless of their respective states of incorporation or

13   residence. This forum-selection clause specifically provided that Sonoma County would be

14   the exclusive venue for legal proceedings. A true and correct copy of the Agreement is

15   attached as Exhibit A and incorporated by reference.

16         6.      The Agreement was a result of extensive and detailed negotiations and included

17   provisions specifically required by Defendants.

18         7.      According to the Agreement, Plaintiff agreed to provide services to Defendant

19   in connection with Plaintiff's web-based and mobile communications platform including, but

20   not limited to, text messaging services, online scheduling, business listing management, data

21   management, content management and data reporting.

22         8.      Plaintiff engaged third party service providers to assist with providing services

23   under the Agreement and entered into agreements with said providers and obtained financing

24   from third parties to minimize Defendant's costs.

25         9.      Pursuant to the Agreement, Section 7(a), Plaintiff agreed to and did send

26   Defendant, each month in advance, an invoice setting forth the Platform Services to be

27   provided and fees Defendant owed for said services. Defendant agreed to pay fees and any

28   applicable taxes within thirty (30) days of the date of such invoice.

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1   10. Pursuant to section IV(A) of Annex A to the Agreement, the term of the

2 Agreement was three years.

3   11. On June 1, 2019, Plaintiff sent Defendant Invoice number 903 in the amount of

4 $125,400.00 owed.   Defendant failed and refused to pay the money it owed Plaintiff.

5   12. On July 10, 2019, Plaintiff again demanded payment for all past due balances

6 and notified Defendant of its breach of the Agreement.  Defendant continued to refuse to pay

7 Plaintiff for the fees owed.

8   13. Despite Defendant's refusal to pay Plaintiff for the money owed under the

9 Agreement, Plaintiff continued to provide, and Defendant continued to use Plaintiff's services.

10   14. On or around August 19, 2019, Plaintiff wrote to Defendant to advise that it

11 would be forced to terminate all services provided to Defendant in an effort to mitigate

12 damages.  Defendant still refused to pay the amounts past-due to Plaintiff.

13   15. Plaintiff was forced to hire legal counsel and file this action.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

(Against all Defendants)

17   16. Plaintiff hereby realleges and incorporates by reference each and every

18 allegation contained in paragraphs 1 through 15, inclusive, of this Complaint, as though fully

19 set forth herein.

20   17. Plaintiff has fully performed all conditions of the Agreement on its part to be

21 performed, except to the extent excused therefrom by Defendant's conduct.

22   18. Commencing on or around July 1, 2019 and continuing thereafter, Defendant

23 has breached the terms of the Agreement by failing and refusing to pay Plaintiff for services

24 performed pursuant to the Agreement.  Despite Plaintiff's timely notice of the breach,

25 Defendants have failed and refused to pay for the services provided by Plaintiff and cure the

26 breach.  As a result of Defendant's breach, Plaintiff was forced to stop providing services to

27 Defendant.

28   19. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ, LLP

1   damages in an amount to be shown at the time of trial including but not limited to having to

2   terminate agreements Plaintiff had with third party serve providers who assist with providing

3   the services under the Agreement.

4       20.    As a direct and proximate result of Defendant's conduct, Plaintiff was

5   compelled to retain legal counsel to enforce the Agreement and Defendant is liable for

6   Plaintiff's reasonable attorney fees in an amount to be shown at the time of trial pursuant to

7   section 10(a)(iii) of the Agreement.

8                           **SECOND CAUSE OF ACTION**

9                           **PROMISSORY ESTOPPEL**

10                          (Against All Defendants)

11      21.    Plaintiff hereby realleges and incorporates by reference each and every

12  allegation contained in paragraphs 1 through 20, inclusive, of this Complaint, as though fully

13  set forth herein.

14      22.    Plaintiff reasonably and detrimentally relied on Defendant's promises under the

15  Agreement which include, but are not limited to, entering into agreements with third party

16  service providers who assist with providing the services under the Agreement and obtaining

17  funding.  Plaintiff also sought funding from other sources to keep Defendant's costs done.

18  Plaintiff has and will suffer damages in relation to its agreements with third parties as a result

19  of its reasonable reliance on Defendant's promises.

20      23.    Defendant has materially breached its promise by failing to perform its

21  obligations under the Agreement and otherwise has failed to act in good faith under the

22  Agreement, refusing to pay Plaintiff for money owed and to complete the Agreement term.

23      24.    Unless the Court requires Defendant to perform its obligations under the

24  Agreement, Plaintiff will be irreparably harmed.

25      25.    As a direct, proximate and substantial result of Defendant's conduct, Plaintiff

26  has suffered and continues to suffer damages.

27                          **THIRD CAUSE OF ACTION**

28                          **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

4

(Against all Defendants)

26.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 25, inclusive, of this Complaint, as though fully set forth herein.

27.     The covenant of good faith and fair dealing is implied in all contracts to protect the express covenants or promises of the contract.

28.     Said covenant obligated Defendant to perform all the terms and conditions of the Agreement fairly and in good faith and to refrain from doing any act which could prevent or impede Plaintiff from performing any or all of the conditions of the Agreement that it agreed to perform or any act that would deprive Plaintiff of the benefits of the Agreement.

29.     Plaintiff was prevented by Defendant from dutifully performing all of the duties and conditions of the Agreement.

30.     Defendant knew Plaintiff had relied on the material representations by Defendant and began to fulfill its obligations and duties pursuant to the Agreement.  Defendant further knew that the scope of the services Plaintiff was required to provide would require Plaintiff to expend the vast majority of its resources on services to Defendant and enter into agreements with third parties to provide services to Defendant.  Defendant also represented that the Agreement term would be three years.

31.     As a cause of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer losses to its damage in an amount to be proven at the time of trial.  As a further and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has incurred reasonable attorney fees in an attempt to secure Defendant's performance under the Agreement.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1) General damages according to proof;

(2) Special damages according to proof;

(3) Reasonable attorney fees;

1    (4) Prejudgment interest at the legal rate;

2    (5) Costs of suit; and

3    (6) Such other and further relief as the Court may deem just and proper.

4

5                                          PERRY, JOHNSON, ANDERSON, MILLER
                                           & MOSKOWITZ, LLP
6

7
     DATED: August 26, 2019          By:
8                                          DEBORAH S. BULL
                                           NICOLE M. JAFFEE
9                                          Attorneys for Plaintiff
                                           Convergent Mobile, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     _____
                                    6
                          **COMPLAINT FOR DAMAGES**

# EXHIBIT A



#### Convergent Mobile Master License Agreement

This Master Convergent Mobile License Agreement (the "**Agreement**") is made as of the date written below (the "**Effective Date**") by and between Convergent Mobile, Inc., a California corporation ("**Convergent Mobile**"), and JTH Tax, Inc., a Delaware corporation d/b/a Liberty Tax Service ("**JTH Tax**").

This Agreement consists of this cover signature page and the following attachments and annexes, each of which is incorporated herein by reference:

- Convergent Mobile Standard Terms & Conditions;

- Annex A – System Definitions, Platform Services Definitions, Deliverables and Custom Development Schedule

- Annex B – Service Levels

By signing below, each party represents and warrants to the other party that (i) it has the authority to enter into this Agreement and (ii) it has read and understood, and will act in accordance with, all of the terms set forth in the attached documents.

IN WITNESS WHEREOF, the parties hereto have each caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

JTH Tax, Inc. d/b/a Liberty Tax Service

By: *Edward Brunot*
Name:   Edward Brunot
Title:   President/Chief Executive Officer

1716 Corporate Landing Parkway
Virginia Beach, VA 23454
(800) 790-3863
Edward.Brunot@libtax.com

Effective Date: _12/1/17_

Convergent Mobile, Inc.

By:
Name:   MICKEY BREEN
Title:   CEO

870 Knight Street
Sonoma, CA 95476
707.477.2949
mbreen@convergentmobile.com

Convergent Mobile Master License Agreement  1          JTH, Inc. d/b/a Liberty Tax Service

Convergent Mobile Standard Terms & Conditions

I.    Scope

(a)    This Agreement, together with all Annexes and Exhibits (collectively, the **"Agreement"**), sets forth the terms and conditions governing the license to JTH Tax for services provided hereunder and the non-exclusive use by JTH Tax., its affiliated companies and franchisees of JTH Tax Inc. and affiliated companies (collectively "Customer") , of the web-based and mobile communications Convergent Mobile platform, including SMS (text), online scheduling (OnTyme) and business listing management (LBL), data management, and reporting platform operated by or on behalf of Convergent Mobile (described further in Annex A which upon execution of both parties shall become part and parcel to this Agreement) (collectively, the **"System"**) on and through which Customer may (i) obtain access and respond to requests for text messages (**"Messages"**); (ii) obtain, store and manage non-public personal identification information and preference information (the **"Subscriber Data"**) by individuals opting to receive Messages from Customer through the System (each, a **"Subscriber"**); (iii) send or receive Messages, in such formats then available on the System, to or from Subscribers (each, a **"Transmission"**); (iv) manage Subscriber Data; (v) create analytical reports for review of Subscriber Data and/or Queries; and (vi) use other functionality of the System as made available by Convergent Mobile (collectively, items (i) though (vi) shall mean the **"Platform Services"** including but not limited to the details listed in Annex A.

(b) Access to the System as described herein and on Annex A and individual Platform Services described in Annex A require (i) custom development or graphic services or (ii) integration of certain applications owned by Customer, or licensed to or otherwise made available to Customer by third parties (collectively, **"Customer Applications"**) through an API connection to the System. Convergent Mobile warrants that all custom development, graphic services and integration of applications that are necessary for the Customer to utilize the System, the Platform Services or Customer Applications are listed in detail on Annex A.

(c)  In the event that the Customer and Convergent Mobile agree that additional custom development is desirable, the Customer and Convergent Mobile may enter into separate Statement of Work Agreements ("SOWs"). Such SOWs must be in writing and signed by both parties.   While the terms and conditions of such SOWs, if any, remain to be determined, Convergent Mobile agrees to provide custom development work at a cost of $150 per hour.

2.    Hosting, License & Restrictions

(a) Grant of License. Convergent Mobile hereby grants to Customer a non-exclusive, non-sublicensable, non-assignable, right and license for the term of this Agreement to access and use the System solely for Customer's business purposes or as may be further provided herein, including as set forth in Section 1, Annex A, and in accordance with the terms hereof. All rights not expressly granted to Customer are reserved by Convergent Mobile and its licensors.

(b) Hosting and Operation of System. Convergent Mobile will host and operate the System, for the benefit of Customer in accordance with the terms of this Agreement. Neither the System nor its components will be installed on any systems or networks of Customer. The System will be accessible by Customer through the Internet.

(c) Convergent Mobile Licensed Materials. The System and the Platform Services provided, including any documentation for any component of the System or Platform Services and any software, data, hardware, or other materials used or made available by Convergent Mobile related to, any modified or derivative form of all or part of, and any trademarks or indicia of origin with respect to the System or Platform Services are collectively referred to herein as the **"Convergent Mobile Licensed Materials."**   Convergent Mobile Licensed Materials, if any, not expressly identified in this Agreement, and to be provided to Customer by Convergent Mobile are to be set forth in a separate SOW or agreement executed by the parties. Customer acknowledges and agrees that except as otherwise expressly set forth in this Agreement, it is receiving no right, title or interest in (including, but not limited to IP

Convergent Mobile Master License Agreement 2         JTH, Inc. d/b/a Liberty Tax Service

Rights in) the Convergent Mobile Licensed Materials. For the purposes hereof, all Convergent Mobile Licensed Materials, if any, shall be deemed part of the System, and all Convergent Mobile Licensed Materials (and any interface created therefrom under a SOW) may be used solely in accordance with the terms of this Agreement. As used herein, "IP Rights" means all intellectual property and proprietary rights in any jurisdiction, including, but not limited to, copyrights, trademarks, service marks, trade dress, patents, patent applications and trade secrets.

(d) Restrictions. Customer agrees that, except as expressly provided herein, it will use the System solely for Customer's business use, and, except as expressly set forth in this Agreement, it will not allow any third party, to access or use the System, including vendors and service providers, unless otherwise agreed in advance in writing by Convergent Mobile. Customer shall not use the System (i) for any purpose outside its intended scope and features; (ii) for third-party training, (iii) to act as an application service provider, or in a service bureau mode, for the benefit of any third parties; (iv) for timesharing or rental to third parties; or (v) to design software for distribution to third parties. In addition, the Customer agrees as follows: (A) Customer shall not duplicate any portion of the System (except as part of the authorized use pursuant to the license granted herein) or display, distribute, publish, or otherwise disclose any of the System; (B) except as may be provided in Annex A or a SOW, Customer shall not use any portion of the System to interface with any application other than Customer applications; (C) Customer shall not decompile, disassemble, or otherwise reverse engineer any portion of the System; and (D) Customer shall not sublicense or assign any portion of the System, and any purported sublicense thereof shall be null and void; and (E) Customer shall not release any interface it has developed from the System into production until Convergent Mobile has determined, on the basis of successful validation testing, that it (and Customer's application(s)) functions properly with the System.

(e) Ownership of System. All portions of the System shall at all times remain the property of Convergent Mobile, and upon the reasonable request of Convergent Mobile, Customer promptly shall return any and all identified portions of the System, and any copies thereof, in its possession.

(f) Operation of System. In addition to the custom development described on Annex A the Customer and Convergent Mobile warrant that each is obligated to, and will, provide the following:

i. US411 Text Messaging Service:

  A.  Customer will:
    1.  Provide to Convergent Mobile a database of customers who have affirmed their consent to receive text messages via signature obtained using the Customer's LibTax software application during tax season 2016 or later ("LibTax Customers").
    2.  Indicate in the database of customers which office was patronized by each of the LibTax Customers and which Authorized User is associated with that office.
    3.  Create and send to the System by hitting the "send button" the Messages to be sent via the System ("Approved Messages").
    4.  Using the US411 system provided by Convergent Mobile, send an Approved Message to a select group on LibTax Customers. Customer will identify the select group of LibTax Customers to whom the Approved Message should be sent by the System.

  B.  Convergent Mobile or the System, as applicable:
    1.  Convergent Mobile will develop, host and support a text messaging system.
    2.  Manage Approved Messages for selection by Authorized Users. The System will not transmit any Messages other than Approved Messages.
    3.  Convergent Mobile will purge from any database of Customer Data, Subscriber Data or Customer Content any customer information which was time-stamped prior to January 2016.
    4.  The System will maintain a database of LibTax Customers per franchisee office location patronized including the Authorized User associated with each location.
    5.  The System will maintain security so that only Authorized Users can see, change or otherwise access the database of LibTax Customers for the respective franchisee office location of the Authorized User.
    6.  The System will permit an Authorized User to create/select an Approved Message and the desired LibTax Customers associated with that Authorized User. The Authorized User will then send the Approved

Convergent Mobile Master License Agreement 3       JTH, Inc. d/b/a Liberty Tax Service



Message and the associated LibTax Customers to the System by hitting the "send button." The System will then transmit the Approved Message to the associated LibTax Customers

7. The System will include all necessary legal language, including but not limited to disclaimers and opt-out information, on each Message sent on behalf of the Customer.

8. The System will clearly specify on each Message that message and data rates may apply

9. The System will provide Help and Opt Out options on each Approved Message

10. When LibTax Customers send a STOP, STOPALL, UNSUBSCRIBE, CANCEL, END OR QUIT ("Opt Out") response to the System, the System will remove the LibTax Customer from all databases including Customer Content. The System will prevent any individual who has sent an Opt Out Message from receiving any additional Messages or Approved Messages

11. The System will not permit any Messages being sent before 8AM or after 8PM based on the time zone of the Authorized User.

ii. US411 Contest Management Service:

A. Customer will:
1. Design a Contest or Sweepstakes ("Contest") which encourages individuals to send a text message through the System

B. Convergent Mobile will:
1. Develop, manage and support a text messaging system via which respondents receive one informational text message as a response to the respondent's text message request.
2. Convergent Mobile will include all necessary legal language, including but not limited to disclaimers, message and data rate notices, help and opt-out information, on each message sent by System on behalf of the Customer.

iii. Business Listing Management Service (LBL Pro)

A. Customer will:
1. Provide to the System a list of Customer locations and update this list on a daily basis.

B. The System will:
1. Provide ongoing management of Customer's listing and business data, including claiming, updating, and verifying Customer's business listing information and content ("LBL") which will enable consistent distribution of such data to data providers, search engines and directories.
2. Distribute LBL to all main aggregators.
3. On a daily basis, publish claim and manage content on all Liberty and Siempre related Google pages. For purposes of LBL, Content is defined as business name, address, phone number, website URL, business hours, profile picture, logo and cover photo

4. Create a claiming guide to assist with and promote LBL.
5. Provide an export function to provide ready access to LBL formatted for direct submission to Yelp and other mutually agreed sites.
6. Enable and manage change tracking.
7. Provide accuracy reporting, status reporting (distribution, changes, current inventory) as provided in Annex A.

3. **Ownership of Intellectual Property**

(a) Ownership of Convergent Mobile Content. As between the parties, the System and all content (but not Customer Content), data, data analysis and other information appearing on the System, including any other Confidential Information of Convergent Mobile (collectively, the **"Convergent Mobile Content"**), and all IP Rights therein, are the valuable property of Convergent Mobile, its suppliers and/or licensors, and other than the license granted hereunder, Customer obtains no rights therein or thereto,

(b) Ownership of Customer Content.   Customer Applications, Customer Content and any other Confidential Information of Customer, and all IP Rights therein and thereto, are the valuable property of Customer

Convergent Mobile Master License Agreement   4                JTH, Inc. d/b/a Liberty Tax Service



(or, in the case of certain Customer Applications, Customer's licensors or vendors), and other than any rights expressly granted hereunder, Convergent Mobile obtains no rights therein or thereto, provided however, Convergent Mobile may use Subscriber Data and System data generated by during the term of the Agreement solely for the purpose of providing the Platform Services to the Customer. Without limiting the foregoing, Convergent Mobile shall not use the Customer Content or any other Customer Confidential Information for any reason, including but not limited to, to provide services to any third party, to contact, resell to, or market to Subscribers. As used herein, "**Customer Content**" means: (i) any Subscriber Data; (ii) any data provided by Customer to Convergent whether or not in any Customer database or in a Customer Application; (iii) Franchisee Data; (iv) the Customer Marks; (v) any business or financial plans or data prepared by or on behalf of Customer or its Affiliated Companies; (vi) Customer Confidential Information, (vii) Intellectual Property rights of the Customer, (viii) Customer Applications and (ix) any business or technical diagrams of Customer or its Affiliated Companies. Customer Confidential Information shall include, but not be limited to Subscriber Data, operational and marketing methods and plans, price lists, product lists, processes, methods, ideas, "know how" and the like, strategies, forecasts, information regarding the customers of the Customer, employee information, vendor information, software (including all documentation, code and specifications), hardware and system designs, architectures, structure and protocols.

## 4.   Trademark and Branding

(a)   Grant of Trademark License by Convergent Mobile.   Convergent Mobile hereby grants to Customer a non-exclusive, non-transferable, non-sublicensable, paid up and royalty-free right and license during the Term to display, apply and use the trademarks of Convergent Mobile as provided or approved by Convergent Mobile (the "**Convergent Mobile Marks**") solely in connection with the marketing, advertising and use of the System and solely in the manner and subject to the requirements set forth herein.

(b)   Ownership by Convergent Mobile. Customer acknowledges and agrees that it is not receiving, and shall not acquire any, ownership in the Convergent Mobile Marks hereunder, and that any goodwill arising from Customer's use of the Convergent Mobile Marks shall inure solely to the benefit of Convergent Mobile

(c)   Quality Control of Convergent Mobile Marks. Customer shall maintain at least the quality control standards that it maintains for its marks with respect to its use of the Convergent Mobile Marks. Whenever reasonably possible, Customer will attempt to make Convergent Mobile Marks appear in the same style, typeface and graphic appearance as provided or approved by Convergent Mobile.

(d)   Grant of Trademark License by Customer. Customer hereby grants to Convergent Mobile a non-exclusive, non-transferable, non-sublicensable, fully revocable, paid up and royalty-free right and license during the Term of this Agreement to display, apply and use the trademarks of Customer (the "**Customer Marks**") solely on Convergent Mobile's website and marketing materials to indicate Customer is a Convergent Mobile customer.

(e)   Ownership by Customer. Convergent Mobile acknowledges and agrees that Convergent Mobile shall not acquire any ownership in the Customer Marks hereunder, and that any goodwill arising from Convergent Mobile's use of the Customer Marks shall inure solely to the benefit of Customer.

(f)   Quality Control of Customer Marks.   Convergent Mobile shall maintain at least the quality control standards that it maintains for its marks with respect to its use of the Customer Marks. The Customer Marks shall appear in the same style, typeface and graphic appearance as provided or approved by Customer.   Convergent Mobile shall conform the Customer Marks to the style, typeface and graphic appearance specified therein as indicated by Customer.   Convergent Mobile shall cease any use or display of the Customer Marks if directed by Customer and, in any event, upon termination of the Agreement.

## 5.   Use of the System

(a)   Compliance with Applicable Law.

(i)   Convergent Mobile acknowledges and agrees that the System, including the transmission of Messages, is subject to federal, state and other laws, rules, regulations or interpretations of relevant regulatory organizations or self-regulatory organizations, including but not limited to those applicable for SMS Messages and the Telephone Consumer Protection Act.   Convergent Mobile warrants that the System is compliant with Applicable Law (defined below).

Convergent Mobile Master License Agreement 5                    JHH, Inc. d/b/a Liberty Tax Service



(ii) Customer acknowledges and agrees that its access to and use of the System is subject to federal, state or other laws, rules, regulations or interpretations of relevant regulatory organizations or self-regulatory organizations, including, as applicable for SMS Messages, the Telephone Consumer Protection Act (collectively, "**Applicable Law**") and that it will not approve and forward to the System for transmission any Messages that violate the Applicable Law and that it will not circumvent any safeguard that Convergent Mobile has incorporated into the System.

(iii) Customer agrees not to and to cause its Representatives not to use the System to (A) send or store material containing software viruses, worms, Trojan horses or other harmful computer code, files, scripts, agents or programs; (B) facilitate criminal transactions; (C) send Messages that are fraudulent, obscene, offensive, or in violation of any rights of publicity or privacy; or (D) contravene any Applicable Law.

(b) Right to Cease or Interrupt Service. Convergent Mobile reserves the right, in the event of a material System compromise or misuse use of the System, or to safeguard against an imminent threat to the System, without prior notice, in the exercise of its sole discretion to (i) discontinue transmitting all or any Transmission or Subscriber Data or (ii) suspend or restrict temporarily or permanently disable Customer's or any of its Subscribers' access to or use of all or part of the System; provided that, in each case, Convergent Mobile will give notice to Customer as promptly as practicable under the then-current circumstances.

(c) System Requirements. All cost and expense related to Customer's equipment, Customer's operating platforms, Customer's software and the maintenance thereof, including network connectivity of Customer to the System or the hosted site designated by Convergent Mobile, shall be the sole responsibility of Customer.

(d) Control of System. Convergent Mobile shall have sole and complete control over, and reserves the right at any time to make changes to, the configuration, appearance, content and functionality of the System; provided that Convergent Mobile will give advance electronic notice to Customer, as soon as is reasonably practicable under the then-current circumstances, that would materially alter functionality of System or that would have a material adverse impact on Customer's ability to use the System in accordance with this Agreement provided, however, if any such change has a material adverse impact on Customer's ability to use the System, as determined by Customer in its reasonable discretion, then Customer may terminate this Agreement upon written notice to Convergent Mobile within thirty (30) days of such change, and shall only be obligated to pay Fees incurred prior to such termination (except for any applicable Short Code Fees up to three months following termination, as further contemplated in Section 8, below).

(e) Service Levels. Use of the System is subject to the service levels set forth in Annex B (the "SLA").

6.    **Authorized Persons; Security**

(a) Security. Convergent Mobile maintains appropriate security measures to protect the Customer Content, which security measures are consistent with applicable state and federal laws. Additionally, Convergent Mobile will employ commercially reasonable storage (including backup, archive and redundant data storage, on-site and off-site) and reasonable precautions to prevent loss of or alteration to the Customer Content Convergent Mobile's possession.

(b) Authorized Persons. Customer shall have the right to designate certain employees or other representatives, under the direction of Customer who shall be permitted to access and use the System solely on Customer's behalf (each, an "**Authorized Person**"). Customer at all times shall be liable to Convergent Mobile for the conduct of any of its Authorized Persons on the System, including such Authorized Person's compliance with the terms hereof, Convergent Mobile reserves the right to limit the number of Authorized Persons that Customer may designate, provided any limitations do not hinder Customer's ability to execute daily productions

(c) Customer Security Procedures. Customer shall be responsible for ensuring the security of its use and the use of each of its Representatives of the System in accordance herewith. Customer shall not permit any person other than an Authorized Person to access or use the System on its behalf. Customer acknowledges and agrees that access to and use of the System are through the Internet and Convergent Mobile does not warrant that the Internet is secure. Upon becoming aware of any improper access to or use of the System by any person, Customer shall notify

Convergent Mobile Master License Agreement 6            JTH, Inc. d/b/a Liberty Tax Service



Convergent Mobile thereof as soon as reasonably practicable thereafter, and, to the extent possible, shall take immediate actions to terminate such person's access to and use of the System. If Convergent Mobile believes that any person is breaching System security or is otherwise misusing the System, Convergent Mobile reserves the right to prevent access to the System for such person. Convergent Mobile and Customer shall each make commercially reasonable efforts at their own expense with respect to their own systems to use anti-virus software and commercially reasonable security measures to protect against any computer viruses, worms, trojan horses or other harmful computer codes operating on the System and the Customer's systems.

7.      Fees

(a) Fees.  Customer shall pay to Convergent Mobile the applicable fees specified in Annex A (each, a "Fee"). Each month in advance, Convergent Mobile shall deliver to Customer an invoice setting forth the Platform Services to be rendered to, and the Fees payable by Customer, together with any applicable Taxes (as defined in Section 7(b)). Customer shall pay in U.S. Dollars by check, ACH payment system or wire transfer to Convergent Mobile all applicable Fees and Taxes within thirty (30) days of the date of such invoice.

(b) Taxes and Deductions.  As set forth in Section 7(a), Customer shall pay any applicable sales, use, goods and services, value-added, transfer, withholding or any other taxes imposed on Customer's use of the System by any government or taxing authority and which is to be collected and remitted by Convergent Mobile (each, a "Tax") in connection with this Agreement or relating to the System (other than income tax imposed on Convergent Mobile).

8.      Term and Termination

(a) Agreement Term.  This Agreement shall take effect on the Effective Date and shall terminate as provided in Annex A, or as otherwise expressly provided herein (the "Term").

(b) Renewal. This Agreement may not be renewed except by written agreement signed by both parties.

(c) Termination for Cause.  This Agreement or may be terminated (i) by either party upon written notice effective immediately upon any bankruptcy or insolvency proceeding involving the other party; (ii) by either party upon thirty (30) days prior written notice in the event of a material breach of the Agreement by the other party, where the other party has failed to cure such breach within thirty (30) days of such notice.

(e) Effect of Termination – Customer. Immediately upon termination or expiration of this Agreement, Customer shall pay all Fees owing as of the date of termination, and cease all use of, and shall not access or use the System. At Convergent Mobile's written request, Customer will promptly return or destroy all documents and all other materials provided by Convergent Mobile to Customer (and all copies thereof), whether in machine or human-readable form and regardless of medium, including notes, discs, electronic mails, tapes, films, reference materials and memoranda that contain, refer to, or relate in any way to the System or Convergent Mobile Content, except for necessary archival copies; provided, that Customer's confidentiality obligations hereunder with respect to the retained archival copies shall survive the termination of this Agreement and shall continue for so long as Customer retains such archival copies.  If requested by Convergent Mobile, Customer agrees to certify to Convergent Mobile that all such materials (and any copies thereof) have been returned to Convergent Mobile or destroyed.

(e) Effect of Termination – Convergent Mobile.  Within thirty (30) days of the expiration or the receipt of notice of termination of this Agreement, Convergent Mobile will promptly return to Customer all Customer Confidential Information in a standard, and commercially reasonable, format designated by Customer, and return or destroy all documents and all other materials provided by Customer to Convergent Mobile (and all copies thereof), whether in machine or human-readable form and regardless of medium, including notes, discs, electronic mails, tapes, films, reference materials and memoranda that contain, refer to, or relate in any way to the Customer Confidential Information.  If requested by Customer, Convergent Mobile agrees to certify to Customer that all such materials (and any copies thereof) have been returned to Customer or destroyed.

9.      Representations, Warranties, Covenants and Disclaimers

(a) Customer Representations, Warranties and Covenants.  Customer represents, warrants and covenants to Convergent Mobile that.

Convergent Mobile Master License Agreement   7                    JTH, Inc. d/b/a Liberty Tax Service




(i)  Customer is authorized to enter into this Agreement and to use and access the System as contemplated by this Agreement;

(ii)  this Agreement creates a legal, valid and binding obligation of Customer enforceable by Convergent Mobile in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally and to general principles of equity;

(iii)  Customer's access to and use of the System, including the access and use of its Representatives, will not circumvent the safeguards that Convergent Mobile has incorporated into the System to comply with this Agreement and any Applicable Laws, and that Customer agrees that it is and will be a material breach of this Agreement to evade, or attempt to evade any restrictions or limitations imposed under Applicable Law, including, with respect to transmission of SMS Messages, the Telephone Consumer Protection Act;

(iv)  Customer agrees to obtain appropriate legal consent from, and provide notices to, Subscribers for whom the Customer provides Subscriber Data to Convergent Mobile for Transmission of SMS Messages from Customer. Customer agrees that such consents, notices, SMS Messages, and opt-outs processed by Customer shall comply with all Applicable Law, including the Telephone Consumer Protection Act, and the then current guidelines published by the Mobile Marketing Association, and related rulemaking, including updates to the same.

(b)  Convergent Mobile's Representations and Warranties.  Convergent Mobile represents and warrants to Customer that:

(i)  Convergent Mobile is authorized to enter into this Agreement;

(ii)  this Agreement creates a legal, valid and binding obligation of Convergent Mobile enforceable by Customer in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally and to general principles of equity;

(iii)  Convergent Mobile has and will have all rights, authority, actions and licenses necessary to provide Customer the Platform Services and with the rights to access and use the System and Convergent Mobile Content granted herein;

(iv)  the System is materially compliant with Applicable Laws;

(v)  Convergent Mobile will comply with this Agreement and any Applicable Laws; Convergent Mobile agrees that it is a material breach of this Agreement to violate Applicable Law.

(vi) deleted

(vii) Convergent Mobile will provide Platform Services in a professional and workmanlike manner in compliance with Applicable Law;

(viii)  the System and Convergent Mobile Content and any and all other services, software or intellectual property that Convergent Mobile provides or otherwise makes available to Customer under this Agreement, will not infringe upon, misappropriate or otherwise violate any third-party IP Rights (as defined above);

(ix)  In connection with the System, Convergent Mobile will at all times employ up to date commercially reasonable methodologies, technologies and other means to prevent introduction - and it will not intentionally introduce into Customer's websites, or the hardware, software or network of Customer - any software, virus, worm, "back door," Trojan Horse", or similar harmful code.

(c)  Disclaimer of Warranties.  Except as set forth in the Agreement (including, without limitation, Annex A and Annex B) or any Statement of Work hereunder, Convergent Mobile does not make any representation or warranty to Customer as to the System, whether expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose.

(d)  Force Majeure.  A party shall not be liable for any delay or failure in the performance of its obligations hereunder if and to the extent such delay or failure is caused by fire, flood, explosion, war, terrorism, earthquake, elements of nature or acts of God or the public enemy; riots, civil disorders, rebellions or revolutions in any country; embargoes; any failure in electrical or air conditioning equipment; acts or omissions of carriers or their suppliers,

Convergent Mobile Master License Agreement  8            JTH, Inc. d/b/a Liberty Tax Service



inability to obtain any relevant data, access links or other communication facilities necessary to communicate over the Internet, or any governmental requirements or any acts or failures to act of any governmental authority; or any other cause, whether or not similar to the foregoing, beyond such party's reasonable control (each, a "Force Majeure Event"). If Convergent Mobile is so delayed in its performance, Convergent Mobile immediately shall notify the Customer by telephone, confirm in writing, and describe in reasonable detail the circumstances causing such delay. During the time that any Force Majeure Event continues to exist, each of the obligations of each party hereto, other than those affected by the Force Majeure Event, shall remain in full force and effect and each party shall continue to perform such obligations hereunder.

10.    Indemnification

(a)  Convergent Mobile's Obligations.

(i)  Convergent Mobile shall indemnify, defend and hold harmless Customer and its Representatives, from and against any losses, liabilities, judgments, settlements, damages and costs, including attorneys' fees and disbursements (collectively, "Losses"), resulting from or arising out of any third-party suits, actions, claims, demands or similar proceedings (collectively, "Proceedings"), to the extent that they are based upon or in connection with a claim that the System or Platform Services, or any portion thereof, infringes or violates a third party's IP Rights.  Convergent Mobile shall not be liable for any such indemnification to the extent such infringement is attributable to any information sent by the Customer to Convergent Mobile or to Customer's use of the System or Platform Services.

(ii)  In the event that a third-party claims that the use of all or portion of the System or Platform Services infringes such third party's IP Rights, or, in Convergent Mobile's judgment, the use of all or portion of the System or Platform Services may be enjoined for any reason, Convergent Mobile may, at its sole election, (A) defend against such claim, (B) modify or redesign the System to avoid such infringement claim, (C) obtain a license from such third party to permit Customer's continued use of the System, or (D) terminate the Agreement with respect to such portion of the System.  Subject to Section 11(a) (i) of this Agreement, the provisions of this Section 11 (a) (ii) state the sole and exclusive liability of Convergent Mobile, and the exclusive remedy of Customer, with respect to any such third-party claim.

(iii)  Convergent Mobile shall indemnify and hold harmless Customer and its Representatives, from and against any and all losses, costs and expenses (including reasonable attorney's fees and costs) that may be incurred because of Convergent Mobile's violation of any representation or warranty or any material breach of this Agreement by Convergent Mobile, including without limitation, the representations and warranties contained in Annex A.

b)  Customer's Obligations.  Customer shall indemnify, defend and hold harmless Convergent Mobile and its Representatives from and against any Losses resulting from any Proceedings to the extent that they are based upon or arise out of Customer's material breach of its obligations in Section 12.

11.    Limitation of Liabilities

Except with respect to a party's liability with respect to its indemnification obligations set forth in this Agreement, in no event shall either party or any of its Representatives be liable to the other party for any special, indirect, exemplary, incidental, punitive or consequential damages relating in any manner to this Agreement, and whether such damages are based on contract, tort (including negligence), strict liability or otherwise, or arise from performance issues, lack of availability, reliability or delays or omissions related to System) even if such persons have been advised of the possibility of such damages.

12.    Confidential Information

(a)  Scope.  Each party acknowledges that it or its Representatives may, in the course of performing its or its responsibilities or exercising its rights hereunder, be exposed to or acquire information which is proprietary to or confidential to the other party, its affiliated companies or third parties to whom such other party has a duty of confidentiality.  Any and all non-public information obtained by such party (or its Representatives), concerning the other party, including any trade secrets, processes, proprietary data, and information or documentation related to the other party shall be deemed to be confidential and proprietary information of such other party ("Confidential

Convergent Mobile Master License Agreement 9                    JTH, Inc. d/b/a Liberty Tax Service



Information"). In addition to the foregoing. (i) Confidential Information of Convergent Mobile includes, without limitation, all Convergent Mobile Licensed Materials and any related documentation and any other information that Customer might reasonably anticipate to be Confidential Information of Convergent Mobile; (ii) Confidential Information of Customer includes, without limitation, Customer Content, and any other information that Convergent Mobile might reasonably anticipate to be Confidential Information; (iii) Subscriber Data shall at all times be considered Confidential Information of Customer; and (iv) with respect to both parties, the terms of this Agreement.

(b)  Non-Disclosure.  Each party agrees (i) to hold Confidential Information of the other in strict confidence; (ii) not to disclose such Confidential Information to third parties or to use such Confidential Information for any purpose other than as contemplated by, and authorized under, this Agreement, and (iii) to advise each of its Representatives who may be exposed to such information to keep such Confidential Information confidential. Confidential Information of a party shall not include any information that (A) is in or becomes part of the public domain other than through a breach by the other party of this Agreement or any confidentiality agreement between the parties; (B) is demonstrably known to the other party prior to receipt from such party, without any confidentiality obligation to such party; (C) is independently developed by the other party outside of this Agreement; (D) is rightfully obtained by the other party from third parties which have no obligation of confidentiality to such party, or (E) is required to be disclosed (1) by Applicable Law or pursuant to a subpoena or order of a court or a regulatory, self-regulatory, legislative or other governmental body or competent jurisdiction, or (2) in connection with any report, audit, inquiry or other request for information to which the other party or any of its Representatives is subject; provided, however, that (other than with respect to the disclosure of Confidential Information pursuant to a governmental or other regulatory or self-regulatory audit or inquiry, including in connection with a routine examination or audit, or upon request by any governmental or other regulatory organization, and other than where prohibited by Applicable Law) prior notice of such disclosure shall be provided to the non-disclosing party as soon as practicable so that the non-disclosing party may seek an appropriate protective order or take such action as the non-disclosing party deems appropriate to prevent or limit the release or disclosure of such information (it being agreed that if the non-disclosing party is unable to obtain or does not seek a protective order and the disclosing party is legally compelled to disclose Confidential Information, such disclosure shall be permitted hereunder, but solely to the extent deemed by legal counsel of the disclosing party necessary to comply with such subpoena, order or request).

13.   Data Collection

Convergent Mobile may request business-related information about each Authorized Person, which information shall be limited to the information required in order to register and identify an Authorized Person on the System. Convergent Mobile may use such information only (i) to identify the Authorized Person as a representative of Convergent Mobile may use such information only (i) to identify the Authorized Person as a representative of Customer; and (ii) to monitor use of the System, including any Convergent Mobile website, for purposes of fulfilling its obligations hereunder.    Such information shall be deemed Confidential Information of Customer. Customer shall not knowingly permit any person acting under its direction or control to access the System if not properly authorized to do so or who has been convicted of, or pled no contest to, a crime involving: (a) theft or misappropriation of funds or property; (b) identity theft; (c) fraud, dishonesty or breach of trust; or (d) computer crime.

14.   General

(a)  Governing Law; Choice of Forum.  The laws of the State of California, without regard to the conflict of-laws rules thereof, shall govern this Agreement.  The parties hereby consent to the personal jurisdiction of, and venue in, the state and federal courts in Sonoma, California.

(b)  Assignment.  This Agreement may not be assigned or transferred by either party without the other party's prior written consent and any such purported assignment shall be null and void; provided that this Agreement may be assigned or transferred by either party to its wholly owned subsidiary, its legal successor, or an acquirer of substantially all of its assets, without the other party's consent. No such assignment may constitute a fraudulent conveyance. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and permitted assigns.

(c)  Injunctive Relief.  Customer and Convergent Mobile each acknowledges that a breach by it of this Agreement may cause the other party irreparable injury and damage and therefore any such breach may be enjoined

Convergent Mobile Master License Agreement 10          JTH, Inc. d/b/a Liberty Tax Service 

through injunctive proceedings in addition to any other rights and remedies which may be available to the non-breaching party at law or in equity.

(d) Notices. All notices required or permitted hereunder shall be in writing and shall be hand delivered or sent by an internationally recognized courier service to the parties at the addresses set forth on the first page of the Agreement. All notices to Customer shall also be sent to Customer at the address noted above. Any address for notice may be changed by either party by written notice to the other at any time, and all notices shall be deemed given and received when such notice is received; provided that the parties consent to the transmission of all communications or notices required under this Agreement through recognized national courier services, in electronic form on the Internet, by electronic mail or through any other electronic or digital communications system permitted by Applicable Law.

(e) Severability. If any provision or term hereof, is held to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remainder of this Agreement shall not be affected.

(f) Amendments; Waiver. Except as expressly stated otherwise herein, this Agreement may not be amended or modified unless expressly agreed to in writing by both parties. No provision hereof may be waived except by an instrument in writing executed by the party against whom the waiver is to be effective. The failure of either party at any time to require full performance of any provision hereof will in no manner affect the right of such party at a later time to enforce the same provision or any other provision.

(g) Survival. The provisions of Sections 2(e), 2(e), 3, 4, 6, 8, 10, 11, 12, 13 and 14 shall survive any termination of this Agreement.

(h) Relationship between the Parties. There is no joint venture, partnership, agency or fiduciary relationship existing between the parties and the parties do not intend to create any such relationship by this Agreement. This Agreement does not create, and shall not be construed to create, any right for the benefit of any third party.

(i) Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original instrument, and all of which together shall constitute but one and the same Agreement.

(j) Entire Agreement. Each party acknowledges that it has not been induced to enter into this Agreement by any representation or warranty not set forth herein. This Agreement, attached Annexes and properly executed SOW's, if any, contain the entire agreement of the parties with respect to its subject matter and supersede all other oral, written or other communications between them concerning this subject matter. The headings in this Agreement are intended for convenience of reference and shall not affect its interpretation.

Convergent Mobile Master License Agreement 11                 JTH, Inc. d/b/a Liberty Tax Service



ANEX A

JTH, Inc. d/b/a Liberty Tax Service

ANNEX B – Service Levels

The System provides a service level of 99.5%, meaning that the System will be available 99.5% of the time in a given calendar month, excluding scheduled maintenance (the "Service Level"). The downtime associated with scheduled maintenance shall not exceed 4 hours on a calendar monthly basis and is conducted with at least 24 hours' notice if scheduling is required during normal business hours. Convergent Mobile will use best efforts to avoid scheduled maintenance during normal work hours. In the event Customer events are scheduled in evenings or on weekends, upon advance notice, Convergent Mobile will use its best efforts to avoid scheduled maintenance 2 hours prior to a Customer event through 1 hour after such event. Convergent Mobile will use best efforts to avoid scheduled maintenance during re-airs of Customer events.

Measurement of the Service Level is determined by the availability and correct functioning of operator service infrastructure including the software and systems necessary for receiving and correctly routing Transmissions, and the associated electrical power, routers, switches, hubs, cabling, HVAC, and server hardware for those systems. Measurement of the Service Level does not include the availability or the correct functioning of a) communications or internet worldwide infrastructure beyond Convergent Mobile's control; b) Carrier infrastructure and networks, c) Customer's infrastructure and systems, including network connectivity, hardware, or software; or d) Subscriber mobile devices. System network downtime ("System Downtime") shall be deemed to exist from the time Customer files a trouble ticket with Convergent Mobile notifying Convergent Mobile that the System appears to be unable to receive and correctly route Transmissions until the time the System once again receiving and correctly routing Transmissions.

In the event that Convergent Mobile fails to meet the Service Level during any two consecutive months, and such failure is solely attributable to Convergent Mobile, Convergent Mobile will refund Customer ten (10%) percent of the pro rata Fee attributable to the calendar month in which such failure occurred, for each sixty (60) minute interval of Convergent Mobile Downtime below the Service Level, up to, and not to exceed 100% of such pro rata Fee.

If Customer notifies Convergent Mobile of any problems experienced in its use of the software used to integrate the System with Customer's graphics system(s), Convergent Mobile will use commercially reasonable efforts to correct such problem within a reasonable period of time (but without further liability if Convergent Mobile is unable to do so). If Convergent Mobile is unable to correct such problem within a reasonable period of time, and if such problem has a material adverse effect on Customer's ability to use the System, then Customer may terminate this Agreement upon thirty (30) days' notice to Convergent Mobile.

Convergent Mobile Master License Agreement 13          JTH, Inc. d/b/a Liberty Tax Service 

Annex A to Master License Agreement 2017

# SECTION I - LBL Pro: List of New Features (for JTH Tax, Inc. corporate users only)

## PHASE I – Available for use only by JTH Tax, Inc. by December 30, 2017

### Part 1 – LBL Pro access through Zeenet

A. APIs for Bing, Google and Apple

   1. Locations are processed upon receipt and after successful validation will be distributed to Google, Bing and Apple using APIs within six (6) hours of validation.
   2. Location information from the Liberty Admin System is received automatically via API at the System. Presently, deltas are received daily but the API can be used to send data to the System on demand.
   3. The System will notify Liberty about locations that do not pass validation. Liberty will review and correct any invalid information.

B. LBL Pro will be available for access through ZeeNet using single sign-on (for corporate users only).

C. All changes to the location information made by franchisees will still be made in the Liberty Admin System.

### Part 2 – Location information processed via API

A. Promptly upon receipt of Location information, all locations are processed through address validation with USPS.

B. Locations will be time and date stamped when deltas are received. Distributions to sources will also be time and date stamped by location.

C. Deltas are received daily.

### PART 3 - Reporting

A. DASHBOARD ANALYTICS
   1. Current dashboard provides overview of the count of brand locations, distribution activity and user accounts.
   2. Dashboard improvement (See Part 3, Sections A and B)..

B. GOOGLE MY BUSINESS (GMB) INSIGHTS
   1. Current reporting available in LBL Pro includes GMB Insights data on a Brand and Location level.
   2. New Insights data is released daily. (There is currently a delay of 3-4 days in Google's release of data. The LBL Pro system accommodates for this delay. As Google makes improvements on their timing the System will be updated to accommodate improve Google timing.) Metrics currently included in this reporting are:

Count of Direct and Discovery Searches; Count of Map and Search Views, Count of Website, Direction and Call Actions. All metrics are available on a daily basis, summation occurs based on date range selected by JTH Tax, Inc. when running the reports.

3. Additional modifications already in progress for GMB reporting are: Monthly trend charts showing totals of all locations for Searches, Views and Actions (including count of direct and discovery searches such as brand and keyword searches, count of map and search views and count of website, direction and call actions).

4. Export functionality of data for the GMB report: Brand level is available in both Excel and PDF formats. Location level is available in PDF format.

## C. PRESENCE AND MONITORING

1. This reporting will monitor 5 sites to insure accurate location information is present online. These sites are: Google, Bing, Yahoo, Facebook, and YP.com. JTH Tax, Inc. feedback is welcome.

2. Presence score will be a percentage of total locations found on the sites listed above.

3. Accuracy score will be a percentage of correct information available within the total locations found on the sites listed above.

## D. RANKING.

1. Ranking for the top 5 keywords on Google and Bing for Organic and Local listings

2. Metrics included are average rank and coverage

3. Monthly trend charts will track changes on metrics listed above

## E. ROUTINE AGGREGATOR AUDITING (Aggregator audit costs passed through to JTH Tax, Inc.)

1. The relationships with the aggregators permits the Systems to pull routine audits of all location information for the Liberty Tax Service brand.

2. The System to monitor opening and closing of seasonal stores and routinely clean up any rogue listings found in to the aggregators' systems from outside of our account (Print Yellow Pages, Electronic Directory Assistance, etc.).

3. Audit results to be provided quarterly and outside of the LBL Pro System as these are custom one-off reports.

# PHASE II (Available for use only by JTH Tax, Inc. in October 2018)

## PART I - Google my Business Custom Content in LBL PRO:

LBL Pro will permit custom information to be maintained for use in GMB. The fields collected will include:

A. Google Phone Numbers;

B. Call Tracking Number or Smart Numbers Website URLs containing Analytics code Images;

C. Profile, Logo, Cover, Storefront, Other Photos, etc.;

D. AdWords Extension;

E. Phone Communications Manager;

F. Emails.

Sample Reporting for GMB Trend Charts:

- Monthly trend charts showing totals of all locations for Searches, Views and Actions. These charts also provide YOY

comparisons for each month.



- Charting of Total Views and Actions (Website Clicks, Calls and Directions) by the day of the week.



Sample Reporting for GMB Insights:

- Count of Direct and Discovery Searches (i.e – Brand and Keyword searches)



- Count of Map and Search Views



Sample Reporting for GMB Insights:

- Count of Website, Direction and Call Actions



PART II – Google my Business Custom Content in LBL Pro (Year Two of Agreement)

A. Integration of the PlotMe app into the LBL Pro System. This will permit real-time collection of lat/long coordinates of locations as well as storefront photos. Lat/Long information will assist in any PIN marker corrections needed. Photos should be sent to corporate for approval prior to distribution to Google. Photos can also be used on Office Pages within libertytax.com as needed.

B. Franchisees will also be able to manually upload their storefront photos for use on both the Office Pages and Google Listings.

C. Social Media guidelines, Address Best Practices, Yelp Claiming, etc. will all be easily available from the LBL Pro dashboard so Zees can reference at any time.

## SECTION II - OnTyme SCHEDULING SYSTEM CUSTOM DELIVERABLES

### Phase I (Available for use by December 30, 2017 – requires timely development by both JTH Tax, Inc. and Convergent Mobile to meet use target date):

A. PART 1 - Convergent Mobile will develop and support an online scheduling system which will:

1. Permit Customer/Franchisees the ability to schedule appointments by accessing OnTyme directly via the internet.
2. Permit Customer/Franchisees the ability to schedule appointments by accessing OnTyme via the Customer's call center application.
3. Permit customers of the Customer to schedule appointments via the Customer's public websites (including LibertyTax.com, SiempreTax.com, LibertyTaxCanada.ca and Liberty Tax online DIY sites). Customers of the Customer will make appointments by clicking a "Make Appointment" button or link that will take the customer to the OnTyme page.
4. Permit customers of the Customer to schedule appointments via the Customer's Facebook pages. Customers of the Customer will make appointments by clicking a "Make Appointment"
5. Permit Customer/Franchisees to access the OnTyme application via SSO.
6. Provide at least daily data feeds from the Customer Data to the OnTyme system.

B. Part 2 – Convergent Mobile will implement the following procedures into OnTyme:

1. The System will send a text message reminder twenty-four hours in advance of an appointment as a reminder.
2. On a daily basis, the System will update the Customer's customer management console with all appointments scheduled.
3. OnTyme will update the data feeds on a daily basis.
4. When customer of Customer sends a STOP, STOPALL, UNSUBSCRIBE, CANCEL, END OR QUIT ("Opt-Out") text message through the System, the System will remove all information related to the recipient from all databases. The System will prevent any individual who sent an Opt Out from receiving any additional messages.

5. OnTyme will not send any messages except messages relating to an appointment

6. Customer shall not send any marketing/solicitation messages through OnTyme.

7. If Customer requests a telephone number be removed from the System, the System will act as if the System received an Opt-Out message from such number.

## SECTION III – SUPPORT AND TRAINING

A. Convergent Mobile provides on-demand phone consultation to all franchisees – Response time: 24 hours or less.

B. DMA webinars are available upon request with two-weeks advance notice.

C. On-site are available at Convergent Mobile's discretion and reimbursement of reasonable travel expenses.

## SECTION IV – TERM OF AGREEMENT –

A. Three years for LBL Pro, US411, and OPS411, unless terminated earlier pursuant to the terms of this Agreement.

B. One year for OnTyme unless terminated earlier pursuant to the terms of this Agreement. Notwithstanding the foregoing, in the event that the parties negotiate and formalize a written agreement to continue provision of the OnTyme service, the integrations completed by Convergent Mobile in year one of this Agreement will remain functional during potential future years of service.

## SECTION V – FEES:

C. Annual cost for LBL Pro, US411, and OPS411:

  o  The monthly bill for LBL Pro, US411, and OPS411 will be $125,400, subject to the storefront count below

  o  The total yearly cost for LBL Pro, US411 and OPS411 will be $1,504,800, subject to the storefront count below.

  o  3,800 storefronts - This is the minimum number of stores to be billed. This is referred to as a floor. The storefront count shall not go below this number.

  o  The number of storefronts to be billed will be determined by the largest count of storefronts received within the month of February of each year. If the store count exceeds the floor (3,800 storefronts), then the amount billed will reflect the larger number of stores.

  o  Annual costs below are estimates based on minimum number of stores (3,800 storefronts).

  o  The price per storefront above the minimum storefronts is $33.00 per month.

D. Annual cost breakdown for OnTyme:

  o  Year 1 – No monthly or annual cost.

  o  Year 2 and 3 – If the parties chose to continue this service, OnTyme will be provided at a cost negotiated and formalized in a written document signed by both parties

  o  All development and integrations for OnTyme will be billed on a project basis and subject to a written Statement of Work approved by both parties.

  o  Liberty will not be required to modify any software that Liberty develops in order to support the integration of OnTyme modifications.

## SECTION VI – PAST DUE OBLIGATIONS - All outstanding invoices that are past due and invoices for previous work that had not been invoiced to date shall be paid within five (5) business days of execution of the Agreement. These obligations include the following:

A.  Canada US411 – $3,600 a month for 25 months - $90,000 +$7,200 (additional recent unpaid invoices)

B.  Reputation Management outstanding bill - $39,015

C.  Unpaid balance - $270



## SECTION VII – INVOICING:

A. All products will be billed in a single, integrated invoice each month.

B. All invoices will be sent to LT5 Accounts Payable and any other parties that are needed to approve billing.

C. Invoices due, net 30. Convergent Mobile may charge interest at the rate of one percent (1%) per month for delinquent payments for each 30-day periods delinquent.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Nicole M. Jaffee 255944<br>Perry, Johnson, Anderson, Miller & Moskowitz, LLP<br>438 First Street, 4th Floor<br>Santa Rosa, CA 95401<br>　TELEPHONE NO.: (707) 525-8800　FAX NO.: (707) 545-8242<br>ATTORNEY FOR *(Name)*: Plaintiff, CONVERGENT MOBILE, INC. | **ELECTRONICALLY FILED**<br>**Superior Court of California**<br>**County of Sonoma**<br>**8/26/2019 6:05 PM**<br>**Arlene D. Junior, Clerk of the Court**<br>**By: Branden Rasmussen, Deputy Clerk** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA
STREET ADDRESS: 600 ADMINISTRATION DRIVE
MAILING ADDRESS: ROOM 107J
CITY AND ZIP CODE: SANTA ROSA, CA 95403
BRANCH NAME: Civil Unlimited Division

CASE NAME: Convergent Mobile, Inc. v. JTH Tax, Inc.

| CIVIL CASE COVER SHEET<br>[X] Unlimited　[ ] Limited<br>(Amount　(Amount<br>demanded　demanded is<br>exceeds $25,000) $25,000 or less) | Complex Case Designation<br>[ ] Counter　[ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER: SCV-265057 |
|---|---|---|
| | | JUDGE: |
| | | DEPT.: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [X] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400-3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| **Damage/Wrongful Death) Tort** | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Asbestos (04) | | [ ] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | **Real Property** | [ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | above listed provisionally complex case |
| [ ] Other PI/PD/WD (23) | condemnation (14) | types (41) |
| | [ ] Wrongful eviction (33) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is　[X] is not　complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
　a. [ ] Large number of separately represented parties　d. [ ] Large number of witnesses
　b. [ ] Extensive motion practice raising difficult or novel　e. [ ] Coordination with related actions pending in one or more courts
　　　issues that will be time-consuming to resolve　　　in other counties, states, or countries, or in a federal court
　c. [ ] Substantial amount of documentary evidence　f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary　b. [ ] nonmonetary; declaratory or injunctive relief　c. [ ] punitive
4. Number of causes of action *(specify)*: Three
5. This case [ ] is　[X] is not　a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 8/26/2019

Nicole M. Jaffee
　　　(TYPE OR PRINT NAME)　　　　　　　▶　　　(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CEB │ Essential<br>ceb.com │ Forms | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|---|

BREEN, MICKEY

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice- Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach-Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case-Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ-Administrative Mandamus
Writ-Mandamus on Limited Court Case Matter
Writ-Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal-Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400-3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief from Late Claim
Other Civil Petition

CEB® | Essential
ceb.com | Forms™

BREEN, MICKEY

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>CIVIL DIVISION<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878<br>(707) 521-6500<br>http://www.sonoma.courts.ca.gov<br><br>CONVERGENT MOBILE, INC. vs JTH TAX, INC. DBA LIBERTY<br>TAX SERVICE | (FOR COURT USE ONLY)<br><br>**FILED**<br><br>AUG 2 6 2019<br><br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA<br>By _____ DEPUTY CLERK |
|---|---|
| NOTICE OF ASSIGNMENT TO ONE JUDGE FOR ALL PURPOSES,<br>NOTICE OF CASE MANAGEMENT CONFERENCE,<br>and ORDER TO SHOW CAUSE | Case number:<br><br>SCV-265057 |

### A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT AND WITH ANY CROSS-COMPLAINT

1. **THIS ACTION IS ASSIGNED TO HON. PATRICK BRODERICK FOR ALL PURPOSES.**
Pursuant to California Rules of Court, Rule 2.111(7), the assigned judge's name must appear below the number of the case and the nature of the paper on the first page of each paper presented for filing.

2. EACH DEFENDANT MUST FILE A WRITTEN RESPONSE TO THE COMPLAINT AS REQUIRED BY THE SUMMONS.

    A Case Management Conference has been set at the time and place indicated below:

| Date: Tuesday, 01/07/2020 | Time: 3:00 PM | Courtroom 16 |
|---|---|---|
| Location: 3035 Cleveland Avenue, Santa Rosa. CA 95403 | | |

3. No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement [Judicial Council form #CM-110] and serve it on all other parties in the case. In lieu of each party's filing a separate case management statement, any two or more parties may file a joint statement.

4. At the conference, counsel for each party and each self-represented party must appear personally or by telephone [California Rules of Court, Rule 3.670(c)(2)]; must be familiar with the case; and must be prepared to discuss and commit to the party's position on the issues listed in California Rules of Court, Rule 3.727.

5. Pre-approved dispositions are recorded three (3) court days prior to the case management conference. These may be obtained by calling (707) 521-6883 or by going to http://sonoma.courts.ca.gov/online-services/tentative-rulings.

### ORDER TO SHOW CAUSE

To Plaintiff(s), Cross-complainants, and/or their attorneys of record:
If, on the date shown above, you are not in compliance with the requirements stated in the California Rules of Court, rules 2.30, 3.110, and/or 3.720 through 3.771 inclusive, you must then and there show cause why this court should not impose monetary and/or terminating sanctions in this matter.

Pursuant to California Rule of Court, rule 3.221(b), information and forms related to Alternative Dispute Resolution are available on the Court's website at http://www.sonoma.courts.ca.gov/self-help/adr.

## ELECTRONIC SERVICE OF DOCUMENTS

### Enabled by Local Rule 18.16

Voluntary e-service is available in Sonoma County.  The Court has pre-approved a Stipulation for cases in which the attorneys or parties choose e-service. A copy of the Stipulation is available under the "Civil" section in the "Division" tab of the Court website: http://www.sonoma.courts.ca.gov.  The advantages of e-service to the parties include:

| | |
|---|---|
| **SAVE MONEY** | Reduction in costs related to photocopying, retrieving, storing, messenger and postage fees. No special software is needed to use e-service |
| **SAVE TIME** | Instant service of your documents on all parties |
| **SAVE SPACE** | With 24/7 internet access to all documents, you do not need to house paper copies |
| **GAIN CERTAINTY** | Immediate confirmation of service for your records. Documents are not delayed in the mail or blocked by email spam blockers and firewalls |

To take advantage of e-service, select an e-service provider and file the signed Stipulation with the Court. Parties can then e-serve documents through the selected provider. Information about e-service providers is available at the website for the Sonoma County Bar Association: http://www.sonomacountybar.org.  The Court does not endorse one provider over another.

**To learn more about available e-service providers and their fees, please visit their website**

*Note: Hard-copy pleadings are required to be filed with the Court in accordance with applicable provisions of the Code of Civil Procedure, California Rules of Court and local rules. You do not need to provide a courtesy copy of a served document to the specific department in which the matter has been assigned.*

## DISCOVERY FACILITATOR PROGRAM

Effective January 1, 2008, the Sonoma County Superior Court promulgated Sonoma County Local Rule 4.14 which established the Discovery Facilitator Program.  Participation in the Discovery Facilitator Program shall be deemed to satisfy a party's obligation to meet and confer under Sonoma County Local Rule 5.5 and applicable provisions of the Code of Civil Procedure and California Rules of Court. This program has been providing assistance in resolving discovery disputes and reducing the backlog of matters on the law and motion calendars in our civil law departments.  The Sonoma County Superior Court encourages all attorneys and parties to utilize the Discovery Facilitator Program in order to help resolve or reduce the issues in dispute whether or not a discovery motion is filed.

There is a link to Local Rule 4.14 and the list of discovery facilitator volunteers on the official website of the Sonoma County Superior Court at http://www.sonoma.courts.ca.gov.  On the home page, under the "AVAILABLE PROGRAMS & HELP" section, click on »Discovery Facilitator Program.  You can then click on either "Local Rule 4.14" to obtain the language of the local rule, or "List of Facilitators" for a list of the volunteer discovery facilitators and accompanying contact and biographical information.

**Pursuant to Local Rule 5.1.C:**

The moving party shall, on the date of filing, hand-deliver to the Assigned Judge a courtesy copy, which need not be file-endorsed, of any motion filed. The responding party shall, on the date of filing, hand-deliver to the Assigned Judge a courtesy copy, which need not be file-endorsed, of all opposition papers. Finally, the moving party shall, on the date of filing, hand-deliver to the Assigned Judge a courtesy copy, which need not be file-endorsed, of all reply papers.

**Pursuant to Local Rule 5.1.C.1:**

If any matter scheduled on the law and motion calendar is resolved, dismissed, settled or becomes moot for any reason, the moving party shall immediately notify the judicial assistant for the Assigned Judge if the motion is to be dropped from the law and motion calendar. Said notification may be made by telephone, followed by a letter of confirmation.

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Nicole Jaffee, 255944<br>Perry, Johnson, , ET AL<br>P.O. Box 1028<br>Santa Rosa, CA 95402<br>TELEPHONE NO.: (707) 525-8800 Ext 1041<br>ATTORNEY FOR *(Name)*: | FOR COURT USE ONLY<br><br>**FILED**<br><br>**SEP 1 7 2019**<br><br>Clerk of Superior Court of California,<br>County of Sonoma<br>By_____<br>Deputy Clerk |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF<br>Superior Court of California, Sonoma County<br>600 Administration Dr.<br>Santa Rosa, CA 95403-2818 | |
|---|---|

| PLAINTIFF/PETITIONER: Convergent Mobile, Inc.<br><br>DEFENDANT/RESPONDENT: JTH Tax, Inc. dba Liberty Tax Service | CASE NUMBER:<br>SCV-265057 |
|---|---|

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>14314 |
|---|---|

**BY FAX**

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Summons, Complaint, Civil Case Cover Sheet

3. a. Party served: JTH Tax, Inc. DBA Liberty Tax Service

   b. Person Served: Stephanie Phillips - Legal Assistant - Person Authorized to Accept Service of Process

4. Address where the party was served:  4640 Admiralty Way, 5th Floor
   Marina Del Rey, CA 90292

5. I served the party
   b. **by substituted service.** On (date): 08/28/2019  at (time): 10:35AM  I left the documents listed in item 2 with or in the presence of: Stephanie Phillips - Legal Assistant - Person In Charge Of Office
   (1) (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (4) A declaration of mailing is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   d. on behalf of:
   JTH Tax, Inc. DBA Liberty Tax Service

   under:     CCP 416.10 (corporation)

7. Person who served papers
   a. Name:                                   Irma Graciela Carvajal
   b. Address:           One Legal - 194-Marin
                        1400 North McDowell Blvd, Ste 300
                        Petaluma, CA 94954
   c. Telephone number: 415-491-0606
   d. The fee for service was: $   147.75
   e. I am:
      (3) registered California process server.
         (i)  Employee or independent contractor.
         (ii) Registration No. 2918
         (iii) County Orange

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 09/11/2019

Irma Graciela Carvajal
(NAME OF PERSON WHO SERVED PAPERS)                                        (SIGNATURE)

| Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Rev. Jan 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

OL# 13693423

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*<br>Nicole Jaffee, 255944<br>Perry, Johnson, , ET AL<br>P.O. Box 1028<br>Santa Rosa, CA 95402 | TELEPHONE NO.:<br>(707) 525-8800 Ext 1041 | FOR COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR *(Name)*: | Ref. No. or File No.<br>14314 | |

| Insert name of court, judicial district or branch court, if any:<br>Sonoma<br>600 Administration Dr.<br>Santa Rosa, CA 95403-2818 |
|---|

| PLAINTIFF:<br>Convergent Mobile, Inc. |
|---|

| DEFENDANT:<br>JTH Tax, Inc. dba Liberty Tax Service |
|---|

| PROOF OF SERVICE BY MAIL | | | | CASE NUMBER:<br>SCV-265057 |
|---|---|---|---|---|

**BY FAX**

I am a citizen of the United States, over the age of 18 and not a party to the within action. My business address is 1400 N. McDowell Blvd, Petaluma, CA 94954.

On 09/11/2019, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B) was made (if applicable), I mailed copies of the:

Summons, Complaint, Civil Case Cover Sheet

to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Petaluma, California, addressed as follows:

JTH Tax, Inc. DBA Liberty Tax Service

Stephanie Phillips - Legal Assistant

4640 Admiralty Way, 5th Floor

Marina Del Rey, CA 90292

I am readily familiar with the firm's practice for collection and processing of documents for mailing.  Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

Fee for Service: $ 147.75

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 09/11/2019 at Sacramento, California.

One Legal - 194-Marin

1400 North McDowell Blvd, Ste 300

Petaluma, CA 94954

Travis Carpenter

OL# 13693423